STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-294

SIMMON TAYLOR

VERSUS

G.W. MORGAN LOGGING COMPANY, INC.

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2,
PARISH OF RAPIDES, NO. 10-08133
HONORABLE JAMES BRADDOCK, JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

J. DAVID PAINTER
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David
Painter, and Shannon J. Gremillion, Judges.

AFFIRMED

Gremillion, J. concurs in part, dissents in part, and assigns written reasons.

Bradley J. Gadel
728 Jackson St.
Alexandria, LA 71301
Counsel for Defendant-Appellant:
      G.W. Morgan Logging Company, Inc.

John E. Morton
P.O. Box 11950
Alexandria, LA 71315
Counsel for Plaintiff-Appellee:
      Simmon Taylor

**PAINTER, Judge**

Defendant, G.W. Morgan Trucking Company, Inc. (Morgan), appeals the judgment of the workers' compensation judge (WCJ) ordering it to reinstate Plaintiff, Simmon Taylor's, temporary total disability indemnity benefits retroactively to the date of termination and to pay penalties and attorney's fees. Finding no error in the judgment of the WCJ, we affirm it.

## FACTS

It was stipulated that on June 24, 2009, Plaintiff was injured while in the course and scope of his employment for Morgan. Morgan paid indemnity and medical benefits until August 24, 2010. At that time, all benefits were terminated because Morgan determined that Plaintiff failed to disclose a previous injury on his post-hire medical questionnaire.

In September 2010, Plaintiff filed a disputed claim for compensation. In its answer, Morgan alleged that:

> [M]isrepresentations in claimant's post[-]hire medical questionnaire were not truthful, and that claimant's said failure to answer truthfully directly relates to the medical condition or conditions for which the present claim for benefits is being sought, and/or affects your defendant's ability to receive reimbursement from the Second Injury Fund, warranting enforcement by this Court of LSA-R.S. 23:1208.1 and all benefits both in equity and law benefiting your defendant herein.

Prior to trial, the parties stipulated that the accident was in the course and scope of Plaintiff's employment and that Plaintiff sustained a low back injury in an offshore accident in November 2001. It was further stipulated that on July 16, 2003, Dr. Marco Ramos performed microscopic bilateral foraminectomies and laminectomies at L4-5 and L5-S1 on Plaintiff and that on November 3 2008, Plaintiff did not disclose a prior injury and/or surgery on the post-hire medical questionnaire he signed. The parties further stipulated that the employer's application for Second Injury Fund benefits was denied.

1

The WCJ rendered judgment in favor of Plaintiff. The WCJ ruled that Morgan failed to carry its burden under La.R.S. 23:1208.1 and arbitrarily and unreasonably terminated Plaintiff's benefits, including surgery recommended by his treating physician. The court ordered reinstatement of benefits and payment of penalties and attorney's fees. Morgan appeals. Taylor answered the appeal asking for additional attorney's fees on appeal.

## DISCUSSION

*Violation of La.R.S. 23:1208*

Defendant first argues that the WCJ erred in finding that it did not carry its burden of proof with regard to its La.R.S 23:1208.1 defense by failing to recognize that the triple level laminectomy being recommended for Plaintiff would result in substantially greater disability than it would have had the prior injury not been present.

> The determination by a WCJ as to whether a claimant has made a false statement, willfully, for the purpose of obtaining workers' compensation benefits is a finding of fact[] and is, therefore, subject to the manifest error standard of review. *Phillips v. Diocese of Lafayette*, 03-1241 (La.App. 3 Cir. 3/24/04), 869 So.2d 313. However, we must keep in mind that La.R.S. 23:1208(E) is penal in nature. Any statute that is penal in nature must be strictly construed in favor of the one receiving benefits under that chapter of the law. *Fontenot v. Reddell Vidrine Water Dist.*, 02-439 (La.1/14/03), 836 So.2d 14; *Olander v. Schillilaegh's*, 04-725 (La.App. 3 Cir. 3/23/05), 899 So.2d 97.

> La.R.S. 23:1208 authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. The statute applies to any false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. All of these requirements must be present before a claimant can be penalized. Because this statute is penal in nature, it must be strictly construed, both in its substantive ambit and in its penalty provisions.

> Concerning the standard of appellate review of a forfeiture claim, the court in *Rowan Cos., Inc. v. Powell*, 02-1894, 02-1895, p. 6 (La.App. 1 Cir. 7/2/03), 858 So.2d 676, 680, *writ denied*, 03-2177 (La.11/14/03), 858 So.2d 425 (citations omitted), stated:

The determination of whether there is a false statement or representation willfully made for the purpose of obtaining any benefit or payment involves inherently factual determinations and, thus, this court's review of those findings by the WCJ is governed by the manifest error standard. Under that standard of review, this court may only reverse the WCJ's decision if we find (1) there is no reasonable factual basis for the finding in the record and (2) the finding is clearly wrong or manifestly erroneous.

*Phillips v. Diocese of Lafayette*, 869 So.2d at 316-17, (quoting in part *Flintroy v. Scott Cummins Salvage*, 36,857, p. 12 (La.App. 2 Cir. 3/10/03), 839 So.2d 1231, 1238, *writ denied*, 03-1068 (La.6/6/03), 845 So.2d 1093 (citations omitted))

*Jim Walter Homes, Inc. v. Guilbeau*, 05-1473, pp. 5-6 (La.App. 3 Cir. 6/21/06),

934 So.2d 239, 243-44.

The WCJ gave extensive oral reasons for his finding as follows:

So, the sole issue before the Court is, really, whether or not Mr. Simmon Taylor has violated Revised Statute 23:1208.1 and allowing the employer to effectively terminate his benefits on August 24th of 2010. In the -- in the case of <u>Benoit vs. Ace Transportation</u>, 2010-371, a Louisiana Appeal Third Circuit decision rendered December 8th, 2010, 551 So.3d 192, writ denied 2011-0014, LA March 25th 2011, 61 So.3d 663, the Court stated that forfeiture of Workers' Compensation benefits for failure to truthfully answer a medical questionnaire regarding previous injuries or disabilities is a harsh remedy, and thus, statutory forfeiture must be strictly construed.

A claimant forfeits his or her right to Workers' Compensation benefits for failure to truthfully answer a -- a medical questionnaire regarding previous injuries or disabilities if there is one, an untruthful statement; two, prejudice to the employer; and three, compliance with a notice requirements of the forfeiture statute. The employer maintains the burden of proving each of these elements to avoid liability under the statute. There is no disagreement, I believe, that there was a proper notice on the medical second -- second injury medical questionnaire presented to Mr. Simmon Taylor.

As required to support the claim that an employee forfeits his or her rights to Workers Compensation benefits based on prejudice to the employer, the employee's failure to truthfully answer a medical questionnaire regarding previous injuries or disabilities, an employer can establish prejudice in one of two ways. One, the employer can show that the employee's untruthful answer directly relates to the medical condition at issue or, two, show the employer's answer on the questionnaire affects the employer's ability to recover from the second injury fund.

3

In determining whether a Workers' Compensation claimant's untruthful answer to a question on the employment application regarding previous injuries disabilities, or other medical conditions directly relate to the medical -- medical condition that is the subject of the claim for purposes of anti-fraud forfeiture statute. Direct relation is established when subsequent injury was inevitable or very likely to occur because of presence of preexisting condition, and is not based on mere anatomical connexity.

The deposition[] of Dr. Marco Ramos was introduced into evidence, as well as the deposition of Dr. Donald Smith. With regards to whether the current condition sustained by Mr. Taylor directly relates to the previous injury he had, Dr. Smith was deposed and questioned about this, and on his deposition -- in his deposition, on Page 16 beginning at Line 9, to such a question, Dr. Smith responded, "Now, the first part of what you read about the -- as to whether a second injury would have occurred if it had not been for the fact of the first injury, I really can't answer that. I think that's something that is unknown. I'm not sure that the injury itself hinges on the fact that someone had a previous problem there," and that's through Line 17.

With regards to Dr. Ramos' questioning about this, Dr. Ramos was clear that in his deposition, that after he performed the first surgery on Mr. Simmon Taylor, he indicated that Mr. Taylor had a full recovery from that surgery. He indicated that his -- presently, when Dr. Ramos saw Mr. Taylor for the current problem he had low-back pain with radicular symptoms, and he recommended the surgery. He said this would "This will probably result in some sort of Permanent/Partial Disability." He -- he emphasized in his deposition testimony with respect to Mr Taylor's current conditions that this was completely different injury to different areas of the anatomy than Mr. Taylor had previously sustained. When questioned about the legal language presented to him in Revised Statute 23:1208.1 at Page 13, beginning at Line 12, Dr Ramo'' response was, "I don't know this legal language. That is foreign to me, but all I can tell you is that the second injury was independent of the first, No. 1. No. 2, the second injury caused problems in levels and areas that were not affected by the first injury. So, if there is a merger, the merger is a small percentage." He seemed to indicate that there may be a possibility that he would be likely to have a second injury but I dont find, based on his equivocal answers and the -- and the answer of Dr. Smith, that the employer has shown that the subsequent injuries in the current litigation were directly related to the first injury[].

[T]o sustain the burden of proof with respect to the second issue, whether it affects the employer's ability to -- to recover from the second injury fund, this was addressed by our State Supreme Court in Nabors' Drilling, USA vs. Davis, LA October 21St, 2003, 857 So.2d 407 wherein the Court stated that in order for an employer to be prejudiced by a subsequent injury they must show a merger with the subsequent injury and the first injury to produce a substantially

4

greater disability than had previously been experienced by the injured worker. In fact, they said this: "materially and substantially greater is the language used by the Supreme Court. It recognized that in many -- any -- many instances where there's a second injury, that there may be a greater disability, in most cases, associated with the second injury, but just a greater disability alone is not sufficient to establish a materially and substantially greater disability.

With respect to whether or not this is a materially and substantially greater disability that Mr. Taylor has sustained with regard to the subsequent accident while employed for GW Morgan Logging, Dr. Donald Smith, in his deposition, stated on Page 16 "I do feel that a patient who has had previous surgery and has scarring, and who has the effects of surgery and the weakening effects that that does have on a level, I feel that the subsequent -- I feel that his end result would be a greater than an amount of impairment than in a patient who had only undergone one operative procedure, all things being equal." At -- at Line 18, "Assuming that the patient goes -- progresses and goes to have that surgery at three levels that has been recommended I think that his end impairments would be greater than an individual who had never had the first surgery and the scarring, and, of course, the effects of the injury and the surgery are what I'm speaking to here."

Again, Dr. Ramos' testimony not contradicted by anything else the Court can find in the record, indicated that Mr. Taylor after his first surgery, had a complete and full recovery, which would indicate that there was no disability or restrictions based upon Mr. Taylor from that previous injury, although Revised Statute 23:1378(a), various provisions there indicate there are presumptions of Permanent/Partial Disability one of those being a ruptured disc. This only presumption-- and the presumption can be rebutted by appropriate evidence, and the evidence has been -- been rebutted by Mr. Taylor with the deposition testimony of Dr. Ramos that he had a full recovery

The other issue concerning the 12 -- 23:1208.1 forfeiture concerns the signing and completion of the questionnaire by Mr. Taylor himself, and Mr Taylor testified that he was given this form by Mr Morgan, he rode it around in his truck for two weeks, and Mr. Taylor didn`t impress this Court with being completely a literate individual. In the case of Holmes vs. J.E. Merit Constructors Incorporated, 97-553 Louisiana Appeal Third Circuit, October 29th, 1997, 702 So.2d 1126, the Third Circuit opined that Louisiana Revised Statute 23:1208.1 should be strictly construed against the employer who is presumed to be in a better position to prevent accidents in the workplace through its hiring and firing decisions, than it is the worker who seldom has the luxury of opting out of the workplace. They adopted the language of the trial court in Kina vs. Grand Cove Nursing Home, 93-779 Louisiana Appeal Third Circuit, March 9th, 1994 640 So.2d 348, writ denied 94-0865, LA May 13th, 1994 641 So.2d 234. The language they adopted is the following:

5

"When there is any legitimate ambiguity concerning the questionnaire or inquiries into an employee's medical history, a Court should lean favorably toward the employee in determining whether he knowingly failed to answer the questionnaire truthfully. In other words, from the sanction of LA Revised Statute 23:1208.1 to apply the employer should have the burden to prove that the questionnaire or inquiries into the employee's medical history were clear and unambiguous, that the conditions were such that an employee fully understood that his answers had to be thorough and complete. There are sound reasons to require an employer to explain a medical history questionnaire to an employee who is often uneducated Conceivably, it is in the employer's advantage that the claimant not answer a medical history form correctly or completely, because in that case, it would not owe any Workers' Compensation at all for an re-injury, regardless of the circumstances. The potential for abuse would be great, and the best safeguard would be to require that -- to require or to find that it is implicit within the meaning of 20 -- 23:1208.1 that the employer present the medical history questionnaire to the perspective employee in a thorough manner."

Given the testimony of Mr. Taylor with regards to the presentation of the medical history questionnaire presented to him by GW Morgan Logging, the Court finds that it's not dissimilar to the situation in <u>Hickman vs. Jim Smith Logging</u>, 2004-157 Louisiana Appeal Third Circuit, September 29th, 2004 883 So.2d 1072. Of course, this was also a logging case, and a log truck driver who was presented the medical questionnaire while he was working in the field rode it around for a while a turned it in to the employer, and the Court found that this was an insufficient type of questioning, or presentation of such a questionnaire to an injured worker and found that Mr. Hickman had not violated Revised Statute 23:1208.1. And for all the reasons previous -- just discussed, the Court likewise finds that the employer, GW Logging Company, has failed to prove that Mr. Simmon Taylor is subject to forfeiture of his benefits under Revised Statute 23:1208.1, based on the clear depositions of Dr. Ramos and Dr. Smith, that the -- no evidence that this injury in -- in question was inevitable, due to the second -- due to the previous injury, the fact that neither could -- physician could assign a greater materially and substantial greater disability to Mr. Taylor as a result of this second injury. The -- the circumstances surrounding the completion of the medical questionnaire is -- is precisely the same as in <u>Hickman vs. Jim Smith Logging</u>.

The Court finds that the termination of benefits by the employer in this case [is] arbitrary and capricious and affix[es] an Eight Thousand Dollar ($8,000.00) penalty for the termination of benefits. For the work that Mr. Morton has done in the presentation of the claim on behalf of Mr. Taylor, the Court assesses an Eighty-five Hundred Dollar ($8,500.00) attorney fee. Interest [is] to run on these sums of money in accordance with law, and Mr. Simmon Taylor is entitled to have his benefits reinstated on the basis of Temporary Total

Disability and entitled to have the surgery performed as recommended by Dr. Marco Ramos.

(Paragraph breaks added)

Having reviewed the record herein, we find no error in the WCJ's findings.

*Penalties and Attorney's Fees*

Morgan further asserts that the trial court erred in awarding penalties and attorney's fees.

> "Awards of penalties and attorney's fees in workers' compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed." *Williams v. Rush Masonry, Inc.*, 98-2271, pp. 8-9 (La.6/29/99), 737 So.2d 41, 46 (citation omitted). An appellate court reviews the WCJ's decision to award penalties and attorney fees using the manifest error/clearly wrong standard of review. *Ducote v. La. Indus., Inc.*, 07-1536 (La.App. 3 Cir. 4/2/08), 980 So.2d 843.

*Bethel v. Lake City Trucking,* 11-1542, pp. 7-8 (La.App. 3 Cir. 4/4/12), 87 So.3d 338, 342.

Again, in light of the record, we find no error in the WCJ's determination that penalties and attorney's fees are due or in the amounts awarded.

Further, we award $3,500.00 in additional attorney's fees for work done on appeal.

## CONCLUSION

For these reasons, the judgment of the WCJ is affirmed. Further, Defendant is ordered to pay additional attorney's fees on appeal in the amount of $3,500.00. Costs of this appeal are assessed to Defendant.

**AFFIRMED**.

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**12-294**

**SIMMON TAYLOR**

**VERSUS**

**G.W. MORGAN LOGGING COMPANY, INC.**

**GREMILLION, Judge, concurs in part, dissents in part and assigns written reasons.**

I agree with the majority's conclusions regarding the substance of this case. That is, I see no manifest error in the workers' compensation court's determination that there was no violation of La. R.S. 23:1208.1. However, I also see no arbitrary or capricious handling of this matter by the employer. Thus, I concur in part, and I dissent in part.

It was a stipulated fact that the employee, Mr. Taylor, neglected to advise his employer of a prior accident which resulted in a prior surgery to his low back. Though there may be some medical distinctions, the fact is that the current injury with which Mr. Taylor suffers also afflicts his low back. It is also stipulated that the employer's application to the Second Injury Fund was denied because the records did not disclose Mr. Taylor's previous medical history. I do not think the employer acted arbitrarily or capriciously in arguing that it has been prejudiced as a result of its employee's failure to report. Thus, I would reverse the $8,000.00 in penalties and the $8,500.00 in attorney fees awarded to the plaintiff based on the trial court's holding that the defendant was arbitrary and capricious in the termination of its benefits.